FIRST STATE BANK OF ABILENE v.
SHAW et al. (No. 6044.)

(Court of Civil Appeals of Texas. May 13, 1919. Rehearing Denied July 5, 1919.)

1. VENDOR AND PURCHASER ⬳244—RIGHTS OF INNOCENT PURCHASERS—VENDOR'S LIEN.

In an action on a vendor's lien note, evidence *held* to show that the purchaser of part of the property, who had paid the purchase price upon being shown a release of the lien, was an innocent purchaser not affected by the fact that the vendor's lien note had not in fact been paid.

2. VENDOR AND PURCHASER ⬳274(1)—ACTION ON VENDOR'S LIEN NOTE—MISAPPROPRIATION OF FUNDS BY DEFENDANT'S AGENT—NEGLIGENCE OF HOLDER.

Where plaintiff, holding a vendor's lien note against defendant, sent a release to the representative of a loan company to take up the note in making a loan on the land to the amount of the difference between the purchase price of a part thereof sold to a third party and indebtedness to plaintiff, and the representative procured checks both from the third party and from defendant but misappropriated them, a judgment for defendant could not be sustained on the ground that plaintiff's negligence in delivering the release to representative was the proximate cause of the injury to defendant, where it appeared that he did not use it to obtain defendant's check, which was given solely because the third party's attorney had approved the transaction and sent his client's check for the purchase price.

3. BILLS AND NOTES ⬳452(1)—MATURITY OF NOTE—NOTICE OF NONPAYMENT.

In the absence of an agreement to do so, no duty rests upon a creditor to notify his debtor that the debt has not been paid, although past due, so that the fact that the creditor did not notify the debtor that a note had not been paid until after the death of a third party to

whom defendant had intrusted funds for its payment, and who had misappropriated them, did not avail as a defense in an action on the note.

4. APPEAL AND ERROR ⬳931(4)—REVIEW—PRESUMPTIONS ON APPEAL.

In an action on a vendor's lien note wherein the defense of payment to plaintiff's agent who had misappropriated it was interposed, although the case was submitted on special issues and neither party requested the submission of the question of agency, it will not be presumed on appeal that the trial court found in favor of defendants on such issue and rendered judgment on the theory of payment, where an inconsistent finding of fact was made showing that judgment was rendered on the theory that the agent was not the agent of plaintiff but of defendants, to which defendants made no objection.

Appeal from District Court, Tom Green County; James Cornell, Judge.

Action by the First State Bank of Abilene against C. M. Shaw and others. Judgment for defendants, and plaintiff appeals. Affirmed in part, and in part reversed and rendered.

D. M. Oldham, Jr., of Abilene, Blanks, Collins & Jackson, of San Angelo, and W. D. Giraud, for appellant.

Wright & Harris, of San Angelo, and G. N. Harrison, of Brownwood, for appellees.

KEY, C. J. Appellees acquiesce in the correctness of appellant's statement of the nature and result of this suit, which is as follows:

"This is a suit by the appellant bank upon a plain promissory vendor's lien note, dated February 1, 1912, due five years after date for the sum of $2,900 less a credit of $1,000, with 8 per cent. interest per annum and providing for the usual 10 per cent. attorney's fees, executed by the appellees C. M. Shaw and Laura M. Shaw, and made payable to Lula C. Templeton or order. The note carries a vendor's lien against 257 acres of land, situated in Brown county, Tex., and was given as part purchase money for the land and was further secured by a deed of trust of even date with said note executed by appellees C. M. and Laura M. Shaw to John B. Pope as trustee, to secure Lula C. Templeton or the holder of said note. Appellant brought suit to collect this debt and foreclose its lien on the 257 acres of land.

"The appellees C. M. and Laura M. Shaw answered by: (a) General denial; (b) and specially pleaded payment of the note on or about March 29, 1917, to B. E. Hurlbut of Brownwood, Tex., the duly authorized agent of appellant bank; (c) that appellant bank trusted said Hurlbut with the note and a release of the same, and an affidavit in writing, reciting and acknowledging payment of the note, and he was thereby placed in apparent authority to receive payment of the note and he did induce defendants Shaw to pay him the money owing thereupon, whereby he was clothed with apparent authority to collect the money, and he did collect the same, and by reason of said facts ap-

pellant bank is now estopped to deny payment of the same; (d) that the note was sent to the Brownwood National Bank for collection, together with a release of the same; that no notice was ever given to defendants Shaw that said note was there for collection; that about March 29, 1917, defendants Shaw delivered to said Hurlbut a certain check with instructions to pay off said note out of the proceeds of same, and, if the said Hurlbut misapplied and appropriated the proceeds of said checks and did not pay off said note, the appellant bank did not notify the Brownwood Bank or the defendants Shaw that said note had not been paid until about two months thereafterwards, and not until after the said Hurlbut had destroyed his own life because he had become involved in the misuse of funds, after which appellant bank for the first time notified defendants said note had not been paid and Hurlbut had no authority to collect the same, and, although he was insolvent, they could have induced Hurlbut to have repaid the money in order to prevent a discovery of the fraud he had practiced; and that, by reason of this negligence in failing to notify defendants Shaw of the nonpayment of the note, plaintiff ought not to recover its debt.

"Defendant A. H. Richardson pleaded: (a) General denial; (b) adopted the answer of his codefendants Shaw in all things; (c) that he purchased a part of said lands, to wit, 63 acres of it, from the defendants Shaw, and relying upon said release and affidavit, and believing said note had been paid, he did pay the sum of $3,477.10 to defendants Shaw for said land, therefore he is an innocent purchaser for value without notice and entitled to hold the same free from plaintiff's debt and liens.

"Appellant bank, by supplemental petition, pleaded: (a) Special exceptions to defendants' answers; (b) general denial of them; (c) special denial of payment of the note or that B. E. Hurlbut was its agent, implied or expressed, to receive payment of same; (d) that said Hurlbut was the agent and representative of the defendants Shaw to pay off said note for them, and they trusted him with their money for this purpose; (e) that, if defendants Shaw did pay to Hurlbut their money as alleged by them, they did so at their own risk in not learning and knowing he had no authority to collect the note for plaintiff bank, and that he did not have possession of same for any purpose; that all the defendants knew the note was in the Brownwood Bank for collection and had been sent there by the Abilene Bank for collection and said Hurlbut as the agent of Shaws, along with C. R. Miller, had called at the Brownwood Bank and examined said note and release and made certain objections to the release and caused it to be returned to the appellant bank at Abilene to have the correction made; that the defendants Shaw requested Hurlbut to procure this release for them and to write to appellant bank for them in fixing up his land title, so he could get a loan on the same from some loan company; that, after the release was returned to Hurlbut, defendants Shaw, having actual knowledge and knowing the note was in the Brownwood National Bank for collection, paid their money to Hurlbut about March 29th as their agent and instructed him to go to the bank and pay off said note; and that, if he did not do so, it was their money he misapplied and appro-

priated, and appellant bank knew nothing of the transaction until May 21, 1917, at which day and time they immediately notified Shaw the note had not been paid.

"The defendants each replied by a general denial.

"The case was tried before a jury, and they found that plaintiff was guilty of negligence in not notifying defendants Shaw prior to May 16, 1917, that the note in suit had not been paid. And on this finding judgment was rendered for the defendants against plaintiff.

"The court's main charge was duly excepted to in writing before the argument was begun and before the same was submitted to the jury and the court's attention called to the errors therein. Special charges covering the errors were presented to the trial judge at the proper time and submitted to opposing counsel for examination, and by the court refused and exceptions taken to the action of the court at the time of the errors herein complained of. A motion for new trial was made within the time required by law, assigning error upon the grounds herein complained of. The court overruled said motion, and notice of appeal was thereupon given in the time and manner required by law. An appeal bond in terms of the law was filed within the time required."

The following substantially correct statement is copied from appellees' brief:

"At the inception of this matter, appellees Shaw and wife owed an indebtedness of which the note in suit was a part, aggregating $6,000 in principal, all secured by lien upon the lands in suit. On November 25, 1916, appellant was advised by Hurlbut that appellees had contracted to sell a part of their land, and asked to send abstracts supposed to be in its possession. On January 29, 1917, Hurlbut advised appellant that he was arranging to take up the indebtedness on appellees' land and passing abstract to attorneys for examination. On February 10, 1917, Hurlbut sent appellant a release of its lien to be executed by it, advising that other papers were necessary and the matter might be delayed several days, and stating 'there is also a sale of a part of the security mixed up in this and I will have to have all papers here to close it up.' Hurlbut suggested that the papers be sent to the Brownwood National Bank. On February 13th, appellant wrote Hurlbut that the papers were being forwarded to the Brownwood National Bank 'with instructions to deliver note and release to you upon payment of note,' etc. The release sent by appellant to the Brownwood National Bank was found insufficient by C. R. Miller, the attorney examining the title, and the bank was instructed to return; Hurlbut writing letter of explanation, stating in said letter, 'Also send deed of trust back with other papers so that we will have the matter complete.'

"Appellees made a deed to Richardson, the date being blank, but it was acknowledged the 15th of February, before Hurlbut, and filed for record the same day; but why or by whom does not appear. The consideration was $3,-477.10 cash.

"On February 28th, appellant wrote Hurlbut that the note in suit had been forwarded to the Brownwood National Bank for collection, and asking what disposition had been made of

same. To this Hurlbut replied: 'The party holding the other papers has been quite sick, which has caused delay. We are expecting the papers from him to be here right away now.' This reply is not dated.

"On March 27th, appellant mailed the corrected release direct to Hurlbut, pursuant to a telegram, mentioned in the letter inclosing the release, stating, 'Trusting that this instrument will serve your needs and that the proceeds of this for principal and interest will be forthcoming, we are very truly yours.' On March 28th, Hurlbut acknowledged receipt of the release, asking for other data if it existed, and inclosing affidavit in lieu of it if it did not exist. This affidavit was made by appellant's president, March 29th, and returned on April 2d.

"From this correspondence the appellant knew that from the proceeds of the sale to Richardson, together with the loan Hurlbut was granting appellees, appellant's money was to be paid. Hurlbut was representing the Bankers' Loan & Security Company, which was making the loan to appellees of the difference between the purchase money of the sale to Richardson and the amount due upon their land, viz., $2,600.

"J. R. Cross, as guardian, was making loan to Richardson of a part of purchase money for the land conveyed by appellees to him, to be secured upon said land. C. R. Miller, a practicing lawyer in Brownwood, represented Richardson, Shaw, and Cross at various times in the matter of getting liens discharged, etc., but did not represent Shaw at the time he examined the release in the Brownwood National Bank and had it returned to appellant. He testified: 'Mr. Shaw did not employ me personally to represent him in February or March, 1917, when I first saw this release, in fixing up his land title. I think Mr. Richardson is the man that told me that Mr. Shaw said go ahead and perfect what was necessary. Mr. Shaw paid me $10 for drawing deeds and releases, and I don't remember—some odd matters in connection with getting the title to the 60-odd acres of land satisfactory. * * * I did not consider that I was representing C. M. Shaw and Laura Shaw at the time I instructed the Brownwood National Bank to return the release.' At that time he was representing Richardson in connection with the 60-odd acres he was buying. After that he represented Richardson and Shaw.

"Shaw testified: 'Mr. Richardson told me if I would have an abstract of title fixed to satisfy Mr. C. R. Miller that he would take the land.' 'At the time I delivered these checks to Mr. Hurlbut, I was expecting Mr. C. R. Miller to see that my releases were properly obtained. By his being so particular in objecting to the title to the land that I was selling Mr. Richardson, I thought Mr. Miller would see that everything was all right.' He did not tell Hurlbut to clear up the title so that the loan company would make the loan and Richardson take the title. He simply got abstracts from Hurlbut. Mr. Miller cleared up his title. He says: 'Mr. C. R. Miller was perfecting the title.' Shaw testified: 'If there was any correspondence with reference to abstract with the Abilene Bank, I suppose Mr. Hurlbut was doing it for the loan company—he was trying to clear up the deed, that is the title, so he could get a loan on the balance of my place so I could get that $2,600.' The release intrusted by appellant to Hurlbut

bears date February 13, 1917, and is acknowledged the same date, and is filed for record March 29, 1917; and acknowledges 'the full and final payment' of the note in suit, 'the receipt of which is hereby acknowledged.' It was delivered to Mr. Miller by Hurlbut March 29, 1917.

"Miller further testified: 'I can't recall Mr. B. E. Hurlbut's exact statement to me at the time he delivered this release to me, but the substance was that the release had come back and he had examined it and paid the note. Mr. B. E. Hurlbut did not make any statement to me that the release was just submitted to me for inspection.' Of course, he would not, for the same reason, have delivered the guardian's check made payable to the Shaws, or bearer, but representing the loan to Richardson. When Hurlbut delivered the release to Miller, he told him the note was paid, and Miller filed the release for record at once.

"Miller testified: 'I would not have permitted Mr. Richardson to have paid the money on the purchase of that land without first having that release in my possession'—referring to the release of the note in suit. At the time Hurlbut delivered the release, he told Miller that, on account of the discrepancy in the record owner and the party releasing, the loan company from whom he was procuring loan for appellees had demanded the original note, and it was necessary for him to forward the original note to Ft. Worth to be held, but that he would make Miller a copy, which was made, to keep with the papers. As to the affidavit, Miller testifies: 'Hurlbut stated at first that he would procure such affidavit, and if I am not mistaken he talked to Mr. Oscar Parker over the telephone, and he said he would make such affidavit.' The affidavit bears date March 29, 1917, and is sworn to and acknowledged for record the same date, and filed for record April 2d. The affidavit describes the note, and states that 'the First State Bank of Abilene, Texas, was the legal holder of said note at the time of its payment and was authorized to release same, and did release same,' etc. Hurlbut further told Miller that he knew the facts in regard to the ownership of the note to be released, and he had talked with Mr. Parker, or some one connected with the bank, over the telephone, and they would furnish affidavit with reference to the liquidation of the old bank and transferring assets, including this note.

"Miller testified: 'On the 29th day of March, the release was delivered to me by Mr. Hurlbut at my office in Brownwood, Tex.' Miller had the release in his possession before he wrote the check payable to Shaw and wife, or bearer, but covering the guardian's loan to Richardson, and delivered to Hurlbut with instructions to deliver to them. Miller testified: 'I did not wait to get the affidavit from Abilene. Mr. Hurlbut and I handled that part of it by ourselves. I notified Mr. Richardson to pay his part. The guardian was advancing $1,725, and Richardson was paying the balance of the consideration for his purchase from Shaw.' 'I turned over to Mr. Hurlbut that morning Mr. Cross' check payable to Laura M. and C. M. Shaw, to take to C. M. Shaw and wife. He said he was going out to Shaw's house, and I told him to take the check to the Shaws.' The check was payable to bearer. Miller did not believe the note to be in the

Brownwood National Bank when he turned the check over to Shaw. Hurlbut told him when he got the check that he would take it to Shaw. He did not call on Hurlbut for the note because Hurlbut told him the note would have to be forwarded to the loan company at Ft. Worth, because of a discrepancy in the record owner and the parties who were releasing. Hurlbut said the note would be forwarded to the loan company to be held as evidence of its payment, by the loan company. Miller testified: 'I believed in good faith, when that release was turned over to me by Mr. B. E. Hurlbut and I gave him the check, that he was the agent of the First State Bank of Abilene and had authority to collect the money.' He was requiring appellant's debt and lien released so the deed in trust securing the guardian's loan would be a first lien.

"At another place Miller testified: 'Mr. Shaw has no representative at the Brownwood National Bank at the time Mr. Hurlbut and I were there and examined these matters.'

"The jury found that Miller delivered to Hurlbut the $1,725 check, payable to Shaw and wife, or bearer, but representing the loan to Richardson, requesting him to deliver it to the Shaws; that Hurlbut delivered said check to the Shaws; that Hurlbut represented to Miller that he had paid the note in suit; that Miller was at this time acting as the agent of Richardson; that Miller believed, relied, and acted upon the representation that the note had been paid before delivering said check to Hurlbut; that he would not have delivered said check to Hurlbut had such representation not been made; that plaintiff was negligent in sending Hurlbut the release shown in the record; that Miller would not have delivered to Hurlbut said check had Hurlbut not been in possession of the release; that Miller was not negligent in delivering said check without demanding possession and production of the original note; that Miller was not negligent in delivering to Hurlbut the checks, under all the facts and circumstances found by the jury; that C. M. Shaw indorsed and turned over to Hurlbut the aforesaid check and the one from Richardson, the two checks aggregating a greater sum than the principal and interest due on the note in suit, with instructions to Hurlbut to pay out of the proceeds the note in suit.

"Hurlbut got from Richardson—whom Miller called and told to pay—his check payable to the Shaws, else he could not have exhibited both checks to the Shaws, both checks mentioned in the eleventh finding, and procured their indorsements, which was not technically necessary, as both were payable to bearer.

"The jury found that appellant bank was negligent in not notifying defendant Shaw, prior to May 16th, that the note in suit had not been paid; that Shaw was not guilty of negligence in failing to learn that Hurlbut had not in fact paid the note in suit; that, had Shaw been notified by appellant that the note in suit had not been paid, he would have made effort to have induced or required or procured Hurlbut to make good the money realized as the proceeds of the checks, or some portion thereof; that as a result of said efforts he would have induced, required or procured Hurlbut to replace and make good $2,052 of said proceeds, the amount owing upon the note in suit at the time.

"It is manifest from the findings and the un-disputed evidence in the record that Miller would not have delivered to Hurlbut the $1,725 check drawn payable to Shaw and wife, or bearer, but representing the loan to Richardson, had he not believed that the note in suit had been taken up or paid by Hurlbut.

"The court finds that Shaw intrusted Hurlbut with the checks above mentioned after having indorsed them, expecting and instructing Hurlbut to pay the note in suit out of the proceeds thereof, and thereby made Hurlbut agent for defendants, or appellees, for that purpose; that no relation of principal and agent existed between Shaws, or either of them, and Hurlbut, prior to the delivery of said checks, there being no testimony as to the existence of such relation theretofore; that Hurlbut made no false representations at the time the checks were delivered to him by Shaw; that Hurlbut cashed the checks and misappropriated the proceeds thereof; that but for this conversion and misappropriation appellees would have suffered no injury as the result of plaintiff's negligence, found by the jury.

"Shaw testified: 'At the time I delivered these checks to Mr. Hurlbut, I was expecting Mr. Miller to see that my releases were properly obtained. By his being so particular in objecting to the title to the land I was selling to Mr. Richardson, I thought that Mr. Miller would see that everything was all right.' He testified: 'If I had known or been advised by the First State Bank of Abilene, at any time after March 29, 1917, that its note had not been paid, I would have undertaken to have collected the amount from Mr. Hurlbut before his death.'

"It was shown that after March 29, 1917, B. E. Hurlbut had drawn checks on the Brownwood National Bank and the Citizens' National Bank, both of Brownwood, which were paid, and by which he drew out of said banks the aggregate sum of $15,000. Miller testified in regard to Hurlbut: 'He had lots of friends in Brownwood. He was a very popular man. He had friends who always stayed with him through a long course of business dealings, and who were very intimately and closely associated with him.'

"Hurlbut committed suicide on May 17, 1917. He had been doing a large loan business. Hurlbut had been a banker, merchant, and active business man in Brownwood for many years, and possessed in Brownwood a thoroughly good reputation for honesty and integrity. Shaw had known Hurlbut for a long time, and believed him to be an honest man. Hurlbut was insolvent at the time of his death.

"On March 20th, Hurlbut wrote appellant, saying, 'We are ready to close up the Shaw matter to-day,' but pointing out defects in the original release sent to the bank; closing with these words: 'Please to give this immediate attention, as we are now ready to close the matter.' He wrote appellant again on the same day, stating, 'We are having the release returned for the following corrections,' indicating corrections desired; closing thus: 'The parties are now ready to close the loan.' Appellant did not answer until March 27th, and on the 26th Hurlbut telegraphed it. In its answer of the 27th it says, 'We are in receipt of your telegram of yesterday, and in connection with this release beg to advise,' stating how the releasing bank came to be the owner of the note, and that

there was no record of the fact showing its own- ership. The corrected release was inclosed in this letter, which added, 'I have talked to our attorney, and he advises that this is the only instrument that we can execute relative to this matter,' closing with the quotation contained in the preceding portion of this statement.

"Vaughn Ray, in charge of the collection department of the Brownwood National Bank, testified that the note in suit came in a letter to the Brownwood National Bank from appellant on the 14th of February, 1917; the same was presented to B. E. Hurlbut, under instructions of the First State Bank of Abilene, Tex. He gave no notice to either of the defendants. He testified to the returning of the release to appellant bank, and that it never came into the possession of the Brownwood National Bank afterwards. As an employé of the bank, he would have notified the debtor of collection unless he had other instructions from the sending bank.

"Witness Parker, president of appellant, admitted that he swore to the affidavit in the record and sent it to Mr. Hurlbut. 'I made the affidavit for the purpose of having other people act on it in completion of titles.' He admitted sending the release to Hurlbut after it was returned to him by the Brownwood National Bank for correction. He had no communication with the Brownwood National Bank after the 13th day of February. He did not know Hurlbut, did not know his reputation, never met him, nor had any business with him except in this matter. He said: 'I trusted Mr. Hurlbut with the affidavit, saying the debt had been paid, and with the release. I never had met him, and didn't return the papers to my agent, the Brownwood National Bank, and didn't ask them about the collection until in May.' He did not communicate with the Brownwood National Bank until he got the notice of Hurlbut's death, on May 21st. He never wrote appellees in regard to the note, nor asked why it was not paid. He admits Hurlbut's letters advised that Shaw had sold a part of the land, or contracted to sell it, and testified: 'I can't say whether it is true that I was sending the release to Hurlbut in view of the sale. I thought it was a sale or an additional loan to take it up.' 'I wrote Mr. Hurlbut instead of the Brownwood National Bank, because Mr. Hurlbut was closing the loan, and, if he couldn't collect the note, I wanted it sent back.' 'My correspondence was with Mr. Hurlbut. I knew the Brownwood National Bank had the note. I didn't ask them a word about it during all the time. I intentionally sent those two papers (meaning affidavit and release) to Mr. Hurlbut.' He placed the note with the Brownwood National Bank at the request of Hurlbut. Appellees wrote him nothing about the note or about the payment. He neither had talk nor correspondence with them."

The trial court incorporated in the judgment the following findings of fact, upon issues that were not submitted nor asked to be submitted to the jury:

"(1) Defendant C. M. Shaw, acting for himself and as husband of Mrs. Laura M. Shaw, intrusted Hurlbut with the checks described and mentioned in the eleventh issue submitted to the jury, after having had same properly indorsed, expecting and instructing said Hurlbut to pay the note in suit out of the proceeds thereof; and thereby made said Hurlbut agent for defendants Laura M. Shaw and C. M. Shaw for that purpose.

"(2) No relation of principal and agent between defendants Shaw, or either of them, prior to the delivery of said checks as found above, is shown to exist, and there is no testimony as to the existence of such relation theretofore.

"(3) There is no testimony showing, or tending to show, any false representations made by Hurlbut to either of the Shaws with reference to a past or existing fact at any time.

"(4) The testimony shows said Hurlbut not to have paid the note in suit, or to have paid anything thereon, out of the proceeds of the two checks, but that he cashed said checks and converted and misappropriated the proceeds thereof.

"(5) But for the conversion and misappropriation found above, defendants Shaw would not have been shown to have suffered any injury as a result of plaintiff's negligence (found by jury) and would not have been entitled to judgment against plaintiffs."

Some other testimony will be referred to hereafter.

### Opinion.

[1] The findings of the jury, supported by undisputed testimony, show that the defendant Richardson established his defense of innocent purchaser. Appellant, by delivering to Hurlbut a written release of the debt and mortgage, in which receipt of payment was acknowledged, placed it in his power to perpetrate a fraud upon Richardson's attorney and agent, Miller, by representing to the latter that the debt had been paid, and corroborating such representation by delivering to Miller the release referred to. Miller testified, and the jury so found, that but for that misrepresentation the latter would not have approved the title and permitted his client Richardson to deliver the checks in payment for the land he was purchasing. Hence we hold that the defendant Richardson established his defense of innocent purchaser, and is entitled to have the judgment in his favor affirmed.

As to the defendants C. M. and Laura M. Shaw, the case is quite different.

Oscar Parker, the president of the plaintiff bank, testified, and there was no evidence to the contrary, that he had personal charge of the note in question, and wrote the letters from the plaintiff to Hurlbut and the Brownwood National Bank; and the substance of his testimony is that he never had any other business transaction with Hurlbut, and that the latter was never employed to represent the plaintiff in any matter. Of course, if the correspondence referred to constituted Hurlbut the plaintiff's agent, Parker's testimony could not change that fact; but we do not think that such was the effect of the correspondence.

Counsel for the Shaws contend that the judgment in their favor should be affirmed

for either of the following reasons: First, because the jury found that the plaintiff bank was guilty of negligence in delivering to Hurlbut the release; second, because the jury found that the plaintiff was guilty of negligence in not informing the Shaws that the debt had not been paid; and, third, because there was testimony tending to show that in the transaction involved Hurlbut was the agent of the plaintiff bank, and as the case was submitted to the jury upon special issues, and as neither party requested and the court did not submit to the jury such question of agency, therefore, and in support of the judgment, this court should presume that the trial court found in favor of the Shaws upon that issue, and rendered judgment upon the theory that the delivery by the Shaws of the two checks covering the amount of the indebtedness constituted a payment to the plaintiff.

[2] Neither of these propositions is regarded by this court as tenable. As to the first, the conduct of the plaintiff in delivering the release to Hurlbut was not the direct and proximate cause of any injury to the Shaws. Hurlbut did not use the release for the purpose of inducing the Shaws to deliver to him the checks, which they instructed him to use in payment of plaintiff's debt. In fact, according to the testimony of C. M. Shaw and the finding of the trial court, Hurlbut said nothing tending to constitute a false representation to either of the Shaws at any time; and therefore they cannot and did not claim that they were misled or deceived by any conduct of Hurlbut in any transaction with either of them. Mr. Shaw testified that he relied upon the fact that Mr. Miller, acting as the attorney for Mr. Richardson, had approved the transaction and sent to Shaw checks for Richardson's part of the purchase money, and that it was upon such reliance that he indorsed the checks and delivered them to Hurlbut, upon his promise to use them for the purpose of paying off the note involved in this suit. It was not shown that at the time referred to C. M. Shaw had any knowledge of the fact that the plaintiff had delivered to Hurlbut a release reciting payment of the debt, and that Hurlbut had delivered the same to Miller, and represented to him that the plaintiff's debt had been paid; and therefore Hurlbut's conduct in that respect was not the direct or proximate cause of delivery of the checks by Shaw to Hurlbut. In other words, according to the testimony of C. M. Shaw, himself, it was the conduct of Miller in approving the title for his client Richardson that induced Shaw to deliver to Hurlbut the two checks, and not the facts upon which Miller acted in reaching the conclusion which he reached. While the plaintiff bank may have rested under an obligation not to put it in Hurlbut's power to mislead and

deceive the Shaws, or any one acting for them, it did not rest under any duty to the Shaws not to put it in Hurlbut's power to mislead and deceive Richardson, or his agent, Miller. It owed such duty to Richardson and his agent; but, as it did not owe a duty to the Shaws not to mislead Richardson or his agent, then, as to the Shaws, who were not misled by its conduct, the plaintiff was not guilty of such negligence as constitutes a predicate for judicial relief in their behalf.

[3] As to the second proposition, it ought to be deemed sufficient to say that, in the absence of an agreement to do so, the law places no duty upon a creditor to notify his debtor that the debt has not been paid, although past due. Therefore the fact that the plaintiff did not notify the Shaws that the note in question had not been paid until after the death of Hurlbut cannot avail as a defense; and the fact that the jury found that the plaintiff was guilty of negligence in that respect is of no importance, because, in the absence of the duty resting upon the plaintiff to so notify the Shaws, the plaintiff is not and cannot be guilty of actionable negligence in that respect.

[4] The third proposition urged in behalf of the Shaws is somewhat plausible and not as free from difficulty as the other two; however, after careful consideration, we have reached the conclusion that, while the learned counsel who urge that contention have stated the general rule correctly, still it does not apply to this case. It may be true that the record contains some testimony tending to show that the plaintiff bank had constituted Hurlbut its agent, with authority to collect the debt; and it is true that the case was submitted upon special issues, and neither party asked to have that question submitted to the jury; and, if that was all that is disclosed by the record, it may be that the judgment should be affirmed, upon the theory that the court found in favor of the defendants upon that issue. But we regard the trial judge's first finding of fact as inconsistent with, and therefore in effect showing that he did not make, such finding in favor of the Shaws, and disposed of the case upon the theory that the Shaws delivered the checks referred to to Hurlbut, not as agent of the plaintiff bank, but as their own agent. Appellees have submitted no cross-assignment attacking that finding, and therefore they must be deemed as acquiescing in it.

So, we conclude that the finding referred to disposes of appellees' third contention adversely to them, and that it goes further and renders immaterial whatever may have occurred prior to the time Hurlbut became the agent of appellees the Shaws, and received and appropriated to his own use the funds which they delivered to him with which to

pay off the plaintiff's note against them. According to the facts found by the trial court, the direct and proximate cause of their debt to the plaintiff not being paid was the wrongful conduct of their own agent, and was not attributable to the failure of the plaintiff to perform any duty it owed to the Shaws.

Therefore we think it must be held that the plaintiff was entitled to a judgment against the Shaws for the amount due upon the note sued on, together with 10 per cent. as attorney's fees, and foreclosure of its lien upon the land described in the pleadings, except that portion of it purchased by the defendant Richardson from the Shaws, as shown by his answer; and such judgment has been rendered by this court.

Affirmed in part, and in part reversed and rendered.